1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **CENTRAL DISTRICT OF CALIFORNIA**
10                    **WESTERN DIVISION**
11

12    BOBBY L. M.,                    Case No. 2:22-cv-09376-BFM

13            Plaintiff,              **MEMORANDUM OPINION**
                                      **AND ORDER**
14        v.

15    KILOLO KIJAKAZI, Acting
      Commissioner of Social Security,
16
17            Defendant.

18
                    **I.    PROCEDURAL HISTORY**
19
20        Plaintiff Bobby L. M.[1] applied for a period of disability and disability

21    insurance benefits, alleging a disability that commenced on December 31, 1997.

22    (Administrative Record ("AR") 15.) Plaintiff's application was denied at the

23    initial level of review, after which he requested a hearing in front of an

24    Administrative Law Judge. (AR 59-73.) The ALJ held a hearing (AR 24-43), after

25    which he issued an unfavorable decision finding Plaintiff was not disabled at

26    _____

27        [1]  In the interest of privacy, this Memorandum Opinion and Order uses only
      the first name and middle and last initials of the non-governmental party in this
28    case.

any time from December 31, 1997, his alleged onset date, through June 30, 1998, the date on which he was last insured. (AR 15-19.)

After the Appeals Council denied review, Plaintiff filed an action in this Court in case number 2:20-cv-09185-DFM. The parties stipulated to remand the matter to the Commissioner to reassess Plaintiff's mental impairments. (AR 2634.) The Appeals Council issued an order with directions to the ALJ: the ALJ was to evaluate Plaintiff's mental impairments in accordance with the special technique described in 20 C.F.R. § 404.1520a; as needed, to obtain evidence from a medical expert related to the nature and severity of functional limitations resulting from Plaintiff's mental impairments during the relevant time frame; to proceed with the five-step evaluation process as appropriate; and, if warranted, to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. (AR 2639-41.)

A different ALJ was assigned on remand. She held a hearing and heard from Plaintiff, a medical expert, and a vocational expert. (AR 2578-2608.) After that hearing, the ALJ issued an unfavorable decision again finding Plaintiff was not disabled at any time from December 31, 1997, through June 30, 1998. (AR 2566-72.)

In the original proceedings, the ALJ had found at step two of the disability analysis[2] that Plaintiff had two medically determinable but nonsevere impairments during the relevant period: pharyngitis and bipolar disorder. On remand, however, the newly assigned ALJ concluded that Plaintiff had *no* medically determinable impairments. More specifically, she found "there were no medical signs or laboratory findings to substantiate the existence of a

---

[2] A five-step evaluation process governs whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520(a)-(g)(1), 416.920(a)-(g)(1). The ALJ, properly, conducted the full five-step analysis, but only the steps relevant to the issue raised in the Complaint are discussed here.

2

medically determinable impairment" through the date last insured. (AR 2569.) She noted that "there are scant medical records and treatment evidence" to document Plaintiff's condition "during the very remote period at issue." (AR 2569.) And although there were diagnoses dating back to the relevant period, those diagnoses "are not supported by objective findings or concurrent treatment records"—there is "effectively no direct evidence during the relevant period." (AR 2569.)

In support of her conclusion that Plaintiff had no medically determinable impairments, the ALJ set forth the following chronology of records relating to Plaintiff's mental health:

- December 13, 1990: Army records show diagnoses of organic personality disorder, bipolar disorder, and personality disorder, "manifested by patient's lack of stress tolerance [and] a tendency to become psychotic under stress." (AR 2348.)

- February 14, 1991: a formal request was made to the Army to change Plaintiff's primary diagnosis from organic personality syndrome to bipolar disorder. (AR 2349.)

- March 1991: Plaintiff was discharged from active duty. (AR 2347.)

- Undated (but sometime after Plaintiff's discharge as the doctor references Plaintiff's stint in the Army): a letter from Plaintiff's family physician stated he had noticed Plaintiff to have "a manic-depressive behavior about him." The ALJ noted the letter did not cite any specific clinical evidence and instead referenced only information provided by Plaintiff's family. (AR 2569-70 (citing AR 2350).)

- Undated (but sometime after January 8, 1992, as the psychiatrist referenced Plaintiff's January 8, 1992, VA rating decision): a letter

from a psychiatrist stating Plaintiff was a dual-diagnosis patient who suffered from psychotic-type disorders and/or bipolar disorders. Here again, the ALJ noted the letter contains no mental status examination findings. (AR 2570 (citing AR 2351).)

- February 10, 1996: Plaintiff's family physician wrote that he noticed changes in him after he was discharged and opined that he suffered from bipolar I and II. The ALJ found that statement was not supported by any clinical findings or treatment records. (AR 2570 (citing AR 2352).)

- December 29, 2005: a psychiatrist completed a checkbox form indicating he had treated Plaintiff for bipolar disorder for three years and eight months, since approximately April 2002—nearly four years after Plaintiff's date last insured. (AR 2570 (citing AR 2354).)

(AR 2569-70.)

The ALJ noted that there was "only a single record of treatment from the alleged onset date of December 31, 1997 through the date last insured of June 30, 1998." (AR 2570 (citing AR 2435).) That record, however, described a visit to the VA because of a sore throat; on that occasion, Plaintiff left without being seen. (AR 2570 (citing AR 2435).) The record of that visit did not list any current medications. (AR 2570.) Shortly after the relevant period, in November 1998, Plaintiff again presented to the VA complaining of difficulty swallowing and a swollen throat. (AR 2570 (citing AR 2436).) The ALJ concluded from these two treatment records that Plaintiff was aware he could seek treatment from the VA; she found it significant, then, that those treatment records are devoid of any mental health complaints, mental diagnoses, or need for mental health treatments during the relevant period. (AR 2570.) Based on the full record, the

1  ALJ found that Plaintiff had no medically determinable impairment, and thus
2  did not proceed beyond step two of the analysis.

3      Dissatisfied with the Agency's resolution of his claim, Plaintiff filed a
4  Complaint in this Court. Plaintiff argues that the ALJ erred in her step two
5  determination. (Pl.'s Br. at 3 (citing AR 277, 605, 2348-50).)

6

## II.   STANDARD OF REVIEW

8      Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision
9  to deny benefits to determine if: (1) the Commissioner's findings are supported
10  by substantial evidence; and (2) the Commissioner used correct legal standards.
11  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008);
12  *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).
13  "Substantial evidence . . . is 'more than a mere scintilla.' It means—and only
14  means—'such relevant evidence as a reasonable mind might accept as adequate
15  to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)
16  (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th
17  Cir. 2014) (internal quotation marks and citation omitted). To determine
18  whether substantial evidence supports a finding, the reviewing court "must
19  review the administrative record as a whole, weighing both the evidence that
20  supports and the evidence that detracts from the Commissioner's conclusion."
21  *Reddick v. Chater*, 157 F.3d 715, 710 (9th Cir. 1998).

22

## III.   DISCUSSION

24      Plaintiff raises two challenges to the ALJ's analysis: (1) the ALJ erred
25  when she failed to address Plaintiff's service-related rating from the VA for his
26  bipolar I disorder; and (2) the ALJ's step two finding does not rest on substantial
27  evidence. (Pl.'s Br. at 3.) For the reasons set forth below, the Court determines

28

1     that the ALJ's decision must be affirmed.

2

3     **A.**     **Failure to Consider VA Disability Evidence**

4         Plaintiff points to evidence showing that he was medically discharged on

5 December 12, 1990, and that a December 14, 2018, VA Administrative Note

6 reflected that he "had a 100% rating for Bipolar 1," as well as a knee condition,

7 from his service in the Army. (Pl.'s Br. at 3 (citing AR 277, 605, 2348-50).) He

8 submits that "[i]t is without question that the disability determination from the

9 Veterans Administration relates back to the relevant time period." (Pl.'s Br. at

10 3.)

11         Plaintiff argues that an ALJ must ordinarily give great weight to a VA

12 determination of disability. (Pl.'s Br. at 3 (quoting *McCartey v. Massanari*, 298

13 F.3d 1072, 1076 (9th Cir. 2002) (reversing a denial of benefits because the ALJ

14 "failed to consider the VA finding and did not mention it in his opinion")).) He

15 acknowledges that such a rating does not compel the Agency to reach an

16 identical result, but argues "the ALJ 'must consider the VA's finding in reaching

17 [her] decision' because of the similarities between the VA disability program and

18 the Social Security disability program." (Pl's Br. at 4 (quoting *McCartey*, 298

19 F.3d at 1076).)

20         Plaintiff's argument is unavailing, because the Ninth Circuit recently held

21 that *McCartey* was undermined by a subsequent amendment to the relevant

22 regulations. Plaintiff filed his application on December 4, 2018—*after* the March

23 27, 2017, effective date of the revised regulations regarding the evaluation of

24 medical evidence. *See* 20 C.F.R. § 404.1520c (2017). The 2017 revised

25 regulations provide that "[d]ecisions by other governmental agencies," including

26 the VA, are "inherently neither valuable or persuasive," such that an ALJ is not

27 required to include any analysis about a decision made by any other

28

1  governmental agency. 20 C.F.R. §§ 404.1504, 404.1520b(c)(1). Interpreting that

2  regulation, the Ninth Circuit held that the "theory and reasoning of *McCartey*

3  is clearly irreconcilable with the revised regulations" and that *McCartey* is no

4  longer binding precedent. *Kitchen v. Kijakazi*, __ F.4th __, 2023 WL 5965704, at

5  *4 (9th Cir. Sept. 14, 2023) (citations omitted). Under *Kitchens*, the ALJ did not

6  err in declining to consider Plaintiff's VA disability rating. *Id.*

7

8  **B.    Step Two Analysis**

9        Plaintiff next argues that the ALJ erred in her step two analysis, but that

10  argument fares no better than the previous one. At step two of the five-step

11  sequential inquiry, the Commissioner must decide whether the claimant has a

12  medically severe impairment or combination of impairments. 20 C.F.R. §

13  404.1520(a)(4)(ii). The inquiry at step two is not a high barrier; step two is "'a

14  de minimis screening device" designed to "dispose of groundless claims.'"

15  *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting *Smolen*, 80

16  F.3d at 1290).

17        Plaintiff raises two points of error relating to the ALJ's step two analysis.

18  The first is a specific one: he contends that the ALJ was required at step two to

19  follow a "special psychiatric review technique" and did not do so.[3] (Pl.'s Br. at 4

20  (citing 20 C.F.R. § 404.1520a).) But as Defendant correctly points out (Def't's Br.

21  at 6), the requirement to complete the special psychiatric review technique is

22  triggered by an ALJ's finding that a claimant has a medically determinable

23  mental impairment. *Cf.* 20 C.F.R. § 404.1520a(b)(1) (noting that if it is

24  determined that the claimant has a medically determinable mental impairment,

25

26        [3] The "special psychiatric review technique" refers to a particular kind of
27  analysis conducted in cases involving mental-health impairments. The "special
   technique" is described in 20 C.F.R. § 404.1520a and says, generally, that
28  claimants should be assessed in four broad areas of functional limitations.

the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" using the special technique to assess the degree of functional limitation). Because the ALJ found Plaintiff had no medically determinable impairment, she did not err when she did not conduct the special psychiatric review technique.[4]

Plaintiff's second argument is more general: he argues that this is not a typical disability case "because the Court is faced with looking back to December 1997." (Pl.'s Br. at 5.) He acknowledges that records from the relevant period "are scant," but asserts "they have to be looked at on a continuum." Records from 1996 to 1997 "reveal that [Plaintiff] suffered Bipolar I Disorder back then" and he still suffers from that disorder. (Pl.'s Br. at 5 (*comparing* AR 2350-52 *with* AR 263, 290-92, 473, 478-80, 483, 751, 882, 903, 1135, 1146, 1749, 2524 (all records dated post-2003).) The Court takes his point to be that because there is a bipolar disorder diagnosis before the alleged onset date and because he presently still suffers from it, there is no reason not to find that it was a

---

[4] The Court notes that the original decision determined that Plaintiff did have the medically determinable impairments of pharyngitis and bipolar disorder during the relevant period. (AR 17.) On voluntary remand from the district court, the Appeals Council acknowledged that finding and ordered the ALJ on remand to further evaluate Plaintiff's mental impairment of bipolar disorder in accordance with the special technique in 10 C.F.R. § 404.1520a. (AR 2639-40.) Instead, the ALJ on remand simply determined Plaintiff had no medically determinable mental impairment, thus relieving herself of any obligation to use the special technique. (AR 2569-72.) Plaintiff complained to the Appeals Council that the ALJ on remand "deviat[ed] from the first [ALJ's] decision" by finding no medically determinable mental impairment but acknowledged that the lack of a severe impairment permits the Commissioner to terminate the disability inquiry at that step. (AR 2561.) The Appeals Council rejected Plaintiff's arguments, and stated that the ALJ's September 21, 2022, decision complied with the orders of the U.S. District Court and the Appeals Council. (AR 2555.) Based on the Appeals Council's finding, and the lack of any argument by Plaintiff on this point in this Court, the Court does not believe that the failure to conduct the special technique violated the mandate of the Appeals Council.

1   medically determinable impairment during the relevant period.

2       Beyond that, Plaintiff argues, he was "a victim of homelessness" after his

3   discharge, and so it was difficult for him to obtain constant treatment. (Pl.'s Br.

4   at 5.) He asserts that it is "common knowledge that people who suffer from

5   mental health impairments are reluctant to seek treatment." (Pl.'s Br. at 5

6   (citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).) He submits that

7   the ALJ "looked at this case in a vacuum and failed to address all of the medical

8   evidence." (Pl.'s Br. at 5.)

9       As sympathetic as those arguments may be, the law on this point is clear:

10   a medical diagnosis alone cannot be a basis for finding a medically determinable

11   impairment. 20 C.F.R. §§ 404.1521, 404.1529. And "[i]n claims in which there

12   are no medical signs or laboratory findings to substantiate the existence of a

13   medically determinable impairment, the individual must be found not disabled

14   at step 2 of the sequential evaluation process." *Ukolov v. Barnhart*, 420 F.3d

15   1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p, 1996 WL 374187, at *1-2). There

16   is substantial evidence supporting the ALJ's conclusion that the record here

17   reflects at most a diagnosis during the relevant time frame.

18       While there was evidence showing that Plaintiff was diagnosed with

19   bipolar disorder on discharge from the Army in 1991, there are no clinical or

20   diagnostic findings, or treatment of that disorder reflected in the record until

21   well after the relevant six-month period at issue here. The first record that

22   reflects actual treatment of bipolar disorder is dated December 29, 2005, and

23   reflects only three years and eight months of treatment for bipolar disorder, i.e.,

24   since April 2002. (AR 2354.)

25       The two VA medical treatment records falling closest to the relevant

26   period were not for mental-health-related care (AR 2435, 2436) and reflect no

27   indication of a treatment history with the VA or otherwise, nothing about

28

9

medications for mental health issues, and nothing about diagnoses, tests, symptoms, signs, or treatment relating to bipolar disorder or other issues. (*Cf.* AR 277 (knee condition 10% service related; bipolar disorder 100% service related), *see also* 278-79 (reflecting pain medications taken in 2002 and 2003 for knee pain and spasms), 290 (February 2003 record reflecting that Plaintiff stopped taking lithium seven months prior to that date when his supply ran out, and had not seen a psychiatrist since then; yet he denied auditory or visual hallucinations, depression, suicidal ideation, and homicidal ideation).)

The medical expert confirmed at the hearing that, while there were records from 1991 to 1996 showing a *diagnosis* of bipolar disorder, there were no treatment records, including medication records, to support that diagnosis. (AR 2591-92.) He would only be able to speculate, he said, if asked to identify what limitations Plaintiff might have had during the relevant period (AR 2592).

Moreover, as observed by the ALJ, there is also evidence in the record of a hospitalization in Central Arkansas in 1995, "during which [Plaintiff] received a diagnosis of malingering." (AR 2570 (citing AR 1147 (noting, among other things, that although Plaintiff reported auditory and visual hallucinations, he was never observed attending to internal stimuli; he also complained of sleeping only 2-3 hours a night, but close monitoring showed no sleep disturbance)).) That record, and other inconsistencies the ALJ described between Plaintiff's testimony and statements in the record (AR 2570) led the ALJ to be skeptical about Plaintiff's symptom testimony. Notably, Plaintiff did not take issue with the ALJ's decision regarding his subjective symptom testimony.

In short, while Plaintiff was diagnosed with bipolar disorder upon discharge from the Army, the ALJ properly found that there were no medical signs or laboratory findings in the record from which she could find that Plaintiff had a medically determinable mental impairment from December 31, 1997,

through June 30, 1998. Because there is at least a scintilla of evidence to support the ALJ's finding at step two, this Court must affirm.

## IV.  CONCLUSION

For all the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is **AFFIRMED**.

DATED: October 13, 2023       _____

BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE

11